I please the Court, Anthony Bornstein on behalf of Patrick Osterhoff. Your Honors, trial counsel in this case was ineffective in failing to explain the risks and benefits of waiving the right to a jury and the jury trial itself. Before I address the merits of the case, I'd like to spend a few minutes of my argument explaining why the District Court's procedural default ruling was incorrect. Yeah, please. Your Honors, this is a classic application of the Supreme Court's observation and statement in Picard v. O'Connor, that obviously there are instances in which the ultimate question for disposition will be the same, even when there are variations in the legal theory and the factual allegations urged in support. In Picard, the Court used as an example a challenge to a confession that was based on psychological coercion or physical coercion, and then the specific factual allegations shifted into the Federal forum. It's necessary, then, to chart, if you will, the course of argument and the evolution of the claim from the post-conviction petition and hearing through the appellate level in the State Appellate Tribunal through the District Court. As framed in the original PCR petition, the counsel framed the claim as forcing the petitioner to relinquish his jury trial, and the medication issue was the primary focus in the written petition itself. And I think you will see as the reason why the circuit court, the post-conviction court, addressed it in a more broad fashion was that in the testimony phase of the case, it took on a more expansive focus. The petitioner spoke that he was forced to give up his jury trial and that he preferred a jury trial, to have a jury trial. Counsel's argument to the post-conviction court was the same, and then at the decisional phase, the Court issued a ruling not even addressing the medication issue at all, but framed it as ineffective assistance of counsel for forcing the petitioner to give up his right to a jury trial. Assuming, without yet deciding, that there's been no failure to exhaust, let's get to the merits. As I read the record, the trial judge repeatedly said, now do you really want to do this? The trial judge was very careful about this. How do we find ineffective assistance of counsel based on this record? We're talking about the criminal trial judge in here. Yes, correct. It's a criminal trial judge saying, you know, you have a right to a jury. Do you understand that? Yeah, I understand that. Do you want it in front of me? Yeah, I understand that. Then his lawyer makes sure that, listen, I want it in front of you, not in front of some other judge. And, oh, yeah, okay. I mean, it's a very carefully established record on this point. The Court did establish the generalized right to a jury trial and the existence of that right, and I agree with your honor on that particular point. And then there was an insistence upon not just a bench trial, but a bench trial in front of this judge. Right. And the reason that it's ineffective, Your Honor, is that consistently, even two months prior before the trial takes place in status hearings, and in particular the December status hearing, the counsel represents to the Court that his client has decided to waive jury and that this decision, and the decision is necessarily predicated on the existence of evidence which is not forthcoming and which counsel assumes. And how do we know that? I'm sorry, Your Honor? I'm sorry. How do we know that assertion? Because the lawyer repeatedly represents that this particular evidence not might be presented, but will be presented. No, but how do we know that the election to go before a judge rather than the jury was that that election depended principally on the type of defense that was being presented? In the context of a case, this was a baby-shaking case, right? Extraordinarily prejudicial in presenting it to a jury for the obvious reasons. And where one of the two arguments that were going to be advanced was causation. Did this person do it? I mean, who did it, the mother or the defendant? That was ultimately what the defense was. Now, that was one. The second thing was the medical evidence. How do we know that one factor was the determinative factor here? That is, that it was going to be the medical evidence better presented to a judge than the other type of evidence? I think the conclusion to that, the conclusion that that is the case, derives from how counsel characterized repeatedly the evidence. He stated that the evidence was essential to the defense. On page 304 of the excerpt of record, in a hearing exactly one week before the trial takes place, counsel is pleading with the court for a continuance because the expert that he hoped to call is not available. He says that he's not, he's an essential witness that we can't do without. Now, you have to presume, and I think it's the only way to review this record, that he's communicating that same information to his client. But I don't see the connection. I mean, I understand what you're saying. You're saying that this is a key witness, this is a key defense, and so forth and so on. Be that as it may, I don't know that that necessarily, that it necessarily follows that that's why the jury was waived. I just don't see the connection because there's another argument why the jury was waived. The other argument is that you're trying a baby-shaking case, and you're better off to try that in front of a judge than you are in front of a jury. I mean, that's an argument, whether it's true or not. It's certainly not in this case, but you don't know. I mean, history never teaches its alternatives, so we don't know what would have happened in the other case. Well, Your Honor, this circuit has stated that it would not be proper to attribute to counsel reasons that he did not himself articulate as a basis for acting in a particular way. So you're saying the record demonstrates that the attorney said the reason I'm waiving it is because I want to present the medical evidence. Well, I mean, the attorney is saying to the court in the presence of his client, but over and over, that, you know, I anticipate or we're going to have a court trial. We're going to have a court trial. We're going to have a court trial. They ultimately have the hearing dispensing with the jury two months before the trial actually takes place. Isn't it a bit ironic that had the trial proceeded with, quote, the medical evidence, the medical evidence that we understand in the record would be that he did not suffer from organic brain damage, and there wasn't really good medical evidence. And what if he presented that? What if he said, well, the evidence, the reason that my, I'm going to admit that my client shook him and killed the baby, but he didn't have the requisite mental intent. We'd be back here again saying that was incompetent, incompetent putting on evidence that actually corroborated the prosecution's case. That would be the stronger case, by the way. Well, what was incompetent was impelling the client to waive the jury on the basis of evidence which turned out to be nonexistent and which counsel characterized as a statement. You keep saying that, on the basis of. You keep eliding the question. It's a baby-shaking case. Is there anything in the record to show that that wasn't a factor in counsel's decision? Well, what we have is a, first of all, presumption against waiver, and we have an alternative defense that is belatedly put forward after the other defense is unavailing, that the fiancé, who also had admitted to shaking but did not realize that shaking could be harmful, was also a possible perpetrator. And so counsel, having already articulated culpability of his own client to the same trier of fact over and over, is now positing that this other person. Well, that's the coherent defense argument that you're making, but I don't understand in the jury waiver what difference it makes. What the problem is, and I think best as I can articulate my response, is that Mr. Osterhoff was deprived of a fair opportunity to have an impartial arbiter of fact who had to achieve a decision by unanimous verdict in Oregon, arrive at the decision whether or not Mr. Osterhoff, as opposed to the fiancé, was the actual perpetrator. And that had he had that decision, been able to make that decision without being misled, if you will, as to the existence of evidence which was supposed to be forthcoming, which was the exculpatory basis for admitting. Yes, the brain scan evidence. Listen, your time is up. Let's hear from the other side and then we'll give you a minute to respond. Thank you, Your Honor. May it please the Court, Carolyn Alexander for Respondent, Robert Lampert. I'd like to say just a couple of things on the procedural default issue just very briefly. The facts of this case show exactly why this Court has held that, and the U.S. Supreme Court has held, that ineffectiveness claims must be discreet. If Petitioner had raised this claim to the State Post-Conviction Court, we would have an explanation from counsel about why jury was waived. The claim that was presented was, I was under the influence of medication. That's what counsel responded to. That's what the evidence was before the Post-Conviction Court. But that aside, even assuming that the claim was broader than that, as presented to the Post-Conviction Trial Court, Petitioner chose to limit the claim to the medication issue on appeal. So it's defaulted for that reason. If it was presented to the Post-Conviction Trial Court, it was not presented to the Oregon appellate courts. On the merits of the claim, this also shows, this also shows the problem. It's Petitioner's burden in State Post-Conviction and in Federal habeas to show why counsel was ineffective. We can't speculate about why counsel waived jury. We only know that he responded to the medication issue. I think it's a reasonable inference, as Judge Breyer discusses, that it's a highly prejudicial issue. It's an emotionally charged issue. There was clearly a reason, and the record shows there was clearly a reason, why counsel and Petitioner wanted Judge Kelly to hear this case. They didn't want it before a jury for obvious reasons. They wanted Judge Kelly to hear the case. And, in fact, the record shows that Petitioner would not waive jury if Judge Kelly couldn't hear the case. So presumably they did have a reason. This was also a case where the evidence and the issues were developing in an ongoing way. Counsel did ask for a continuance to develop his medical evidence that he could then base a mental defense on. The trial court denied the continuance. So he had to continue to develop what he could with the scheduling problems with the experts and the court's clear indication that this trial was going to go no matter what. So counsel, the record shows that counsel discussed this case, the issue of jury waiver, constantly with Petitioner. What counsel represented to the trial court was we predict we're going to waive jury. There's no evidence that shows that counsel unilaterally decided we're going to waive jury. This is developing. Petitioner is involved in this. He's letting the trial court know this is how it's proceeding. This is what's happening. I suppose one can argue that it's unsound trial strategy or unsound trial practice, I think, is the term that Petitioner uses, to abandon one defense in the middle of the trial and go to the other one. Is that unconstitutional? Is that ineffectiveness per se? I don't think so under these facts. Given that counsel was doing everything he could to develop that evidence, his expert believed it was there. After apparently a more thorough assessment, it didn't support the defense. Counsel had to go to the second defense, change strategies, I think is what counsel said in his affidavit, to prove beyond reasonable doubt. Had this been to a jury? I don't know. Maybe that would be a better argument. But this was to a judge that Petitioner and his counsel argued. Well, arguably, it would be worse off. I mean, it's nice to have a plan B, but if you have a plan B, you're probably better off with a plan B in front of a judge than you are in front of a jury. Exactly my point, Your Honor. Exactly. Yes and no. I mean, to state the Petitioner's argument here in the terms, I think, strongest for him, he's playing this out in front of the judge so the judge understands every shift in strategy as the facts come in awkwardly and so on. Whereas if this had gone to a jury, the jury would not have heard a lot of this preliminary backing and forthing, and the jury would have been able to hear something that was a single story. The judge heard a couple of stories because the judge was in on it from the beginning. That's the argument. Yes, that's a fair characterization, Your Honor. And I think perhaps counsel would not have played his hand, as it were, if it wasn't before even Judge Kelly. For some reason, they wanted Judge Kelly. So had it even been before another trial judge, perhaps, that wouldn't have happened. But I did want to also make a point, again, Judge Breyer, you mentioned about the waiver, and I think that's a fair way to characterize this is that even if counsel had speculated, counsel told Petitioner, we're going to waive jury because we've got this great mental defense, and it didn't play out. Any harm was cured by the trial court's colloquy when it conducted the jury waiver. It was a thorough waiver under United States v. Ruiz. The Supreme Court says Petitioner doesn't have to know every single detail of a waiver. You have to know generally what you're giving up, and the trial court ensured that. So both claims can be used. I'm not sure that that colloquy adequately addresses the underlying issue, though if counsel has failed in advising his client to advise him of what the risks are, the judge can go on at exquisite length because the defendant's mindset is a jury waiver is a good thing to do. The judge isn't going to surface the fatal flaw or prejudice in why trying it to that judge is there. And I think the argument is, as I understand it, that he wasn't fully informed of what the risks were. So the colloquy didn't cure it, couldn't cure it. Well, Your Honor, I think it depends exactly what risks he didn't know about. And what risks were those, that he thought he had a mental defense or that assuming there's any evidence to support any of that, and I don't think there is, is that constitutionally required? I'm not sure that it is. But in any event, I think both of those claims, even procedural default aside, can simply be resolved on prejudice. And I think Petitioner understands the weakness of his case on the prejudice prong, and that's why he argues it's structural error. Well, we know it's not structural error. Certainly under Campbell v. Rice, the list is short and limited, this Court has said. And failing to advise of these particular risks is not on that short and limited list. So Petitioner hasn't shown that there's a reasonable probability that he wouldn't have waived jury and proceeded to a jury trial, given the facts of this case, the very prejudicial facts of this case, or that if counsel had not mentioned a mental defense at all, or tried to pursue a mental defense with no evidence, that this trial judge would have, there's a reasonable probability this trial judge would have acquitted him on that last count, when the judge acquitted him of two of the three counts anyway, regardless of any error or mistake that counsel might have made. Sorry, what was the sentence here? What was his sentence? Right. He got a mandatory sentence on, I think it was, what, 300 months? Right. So I don't know that he particularly got a break. I mean, yes, he was acquitted of two counts. He got a sentence of 300 months. So, I mean, as to that argument, I don't find that terribly persuasive. Nevertheless. Yes, assuming that the Court couldn't have imposed consecutive sentence for the same incident. Oh, well, I guess you could have 600, but I don't know. I hadn't looked at that. There are limitations to judges' sentencing imposed actually by. Correct, Your Honor. And given that, let's assume that's exactly right. There's just simply no evidence that this judge was biased in any way, or didn't fairly consider the evidence in a reasonable and considered manner. Okay. Thank you. Thank you. Thank you. Would you like a moment? A minute? Thank you. Yeah. Just in the short time, I'd like to emphasize that the colloquy with the criminal trial judge did not cure the harm that had already been done. The validity of a waiver under established Supreme Court precedent depends on the facts and circumstances of each particular case. Counsel is repeatedly saying in this murder-by-abuse case that we're going to raise this guilt-based defense, if you will, but it's okay to do this because I've got evidence and we're going to present evidence, essential evidence, to make that defense work that exculpates your state of mind. And so to answer your question about the link, the client is then led to believe that we've got this good, viable defense based on expert evidence that counsel is representing is not only essential but forthcoming. Not I think it will be forthcoming, but is forthcoming. And then after the waiver is executed, after the colloquy takes place, in fact, about two months later, they're in the middle of trial and that defense isn't there. And for that reason, the waiver is invalid, Your Honors. Thank you. Okay. Thank both of you for your helpful arguments. The case of Osterhoff v. Lampert is now submitted for decision. I think we'll take one more case, then we'll take a ten-minute break. United States v. Glasgow.
judges: Fletcher, Fisher, Breyer